McFarlan v. Norwood.

## EMINENT DOMAIN—MUNICIPAL CORPORATIONS.

[Hamilton (1st) Court of Appeals, June 19, 1916.]

LAURA B. McFARLAN v. CITY OF NORWOOD (CITY) AND S. A. HEADLEY, CITY SOL.

1. Referendum Should be on the Ordinance to Condemn and not on Preliminary Resolution.

> In proceedings for condemnation of land by a municipality, the ordinance to appropriate is the controlling act and it and not the preliminary resolution is the measure on which a referendum should be taken where the referendum vote of the people is desired.

2. Repeal of Earlier Ordinance not Precedent to Operation under Later Ordinance Identical Except as to Overlapping Boundaries of Land to be Condemned.

> Where two or more ordinances have been passed by a municipal council appropriating strips of land to open a street between substantially the same points, such strips not being identical but in part overlaying each other, the fact that the earlier ordinance has not been expressly repealed would not be sufficient reason to prevent proceedings under the last ordinance.

APPEAL.

*Hunt, Bennett & Utter,* for plaintiff.

*O. F. Dwyer,* City Sol., and *S. A. Headley,* for defendants.

JONES (Oliver B.), J.

This is an action heard on appeal, wherein plaintiff, as the owner of certain real estate in the city of Norwood under a lease with the privilege of purchase, seeks to enjoin the city of Norwood from proceeding to appropriate a strip of land through same for the purpose of opening a street called Crown avenue, between Station avenue and the Montgomery pike.

A petition has been filed by the city of Norwood in the court of common pleas against this plaintiff and the owner of the fee of said land, asking the court to cause a jury to be impaneled to make inquiry into and assess the amount of compensation to be paid by the city of Norwood for the strip of land appropriated by an ordinance of said city passed November 10, 1915, and that upon payment of the amount so assessed possession of the property so appropriated be awarded to said city of Norwood.

It is sought in this proceeding to secure a permanent injunction against the city from maintaining and prosecuting said action in the court of common pleas. Such proceedings in injunction have been held to be a proper method of procedure, rather than seeking to make a defense in the appropriation proceeding itself. *Erie Ry.* v. *Youngstown*, 26 O. C. C. 679 (5 N. S. 332); *Pittsburg, C. C. & St. L. Ry.* v. *Greenville*, 69 Ohio St. 487 [69 N. E. 976].

One of the principal grounds upon which this action is based by plaintiff is that numerous resolutions and ordinances seeking to open Crown avenue have been from time to time passed by the city of Norwood, which remain unrepealed upon its records. These resolutions and ordinances provided for the opening of Crown street or avenue on similar but not on identical lines with that now sought to be carried out.

The first was an ordinance to condemn and appropriate, passed by the council of the village of Norwood, August 11, 1892; then a resolution of the city of Norwood dated July 18, 1904, declaring the intention of said city to appropriate certain land for the opening and extending of Crown avenue. This was followed by an ordinance of February 20, 1905, appropriating a similar strip for the same purpose. These ordinances and resolutions seem to have been repealed by a resolution or ordinance of October 16, 1905; and December 7, 1908, a resolution was passed by the council of the city of Norwood, declaring its intention to appropriate a strip of land through the same property for the purpose of opening and extending said Crown avenue from Station avenue to Montgomery avenue, and this resolution was followed by an ordinance to appropriate the same strip of land, passed July 6, 1909. On June 21, 1915, a resolution was passed by the council of the city of Norwood, declaring its intention to appropriate for street purposes for the extension of Crown avenue a strip of land fifty feet wide, being part of that owned by plaintiff; and on November 10, 1915, an ordinance to appropriate the same property was passed, with instructions to the solicitor to apply to a court of competent jurisdiction to have a jury impaneled to make inquiry and assess the compensation to be

McFarlan v. Norwood.

paid for said property.  The proceeding which it is sought to enjoin was brought under this last named resolution and ordinance, by the filing of the petition therein on November 24, 1915, in the court of common pleas, as above stated.  Afterwards, on December 20, 1915, the city council of Norwood passed an ordinance repealing the resolution of December 7, 1908, and on the same day passed another ordinance repealing the ordinance of July 6, 1909.

Plaintiff contends that the condemnation proceedings in the common pleas court should be enjoined because of the conflicting resolutions and ordinances of the city of Norwood, which provided for several different strips of land which in part overlay each other and whose lines were not the same, and that the solicitor had no power to proceed under the last ordinance until all the previous ordinances and the preceding resolutions had been duly repealed; and that the repeal under the ordinance of December 20, 1915, of the previous resolution of December 7, 1908, and ordinance of July 6, 1909, would not be effective because passed after the filing of the petition in the common pleas court under the final appropriation ordinance.

We do not deem these objections to the proceeding important.  It is true that it was held in *Grant* v. *Hyde Park*, 67 Ohio St. 166, [65 N..E. 891], that condemnation proceedings begun under municipal legislation could not be affected by legislation subsequent to the filing of the petition in such proceedings.  In that case the village of Hyde Park undertook to limit the condemnation proceedings with reference to a particular grade of the street about to be opened.  In the instant case, granting that the subsequent repealing ordinance might not be considered, the solicitor had brought his proceeding under the last condemnation ordinance, that of November 10, 1915. While at that time the ordinance of July 6, 1909, had not been explicitly repealed, in our opinion the passage of the later ordinance constituted an implied repeal.  But even if that is not the case, the solicitor was at least authorized to proceed under the last ordinance, and the fact that there might be a valid subsisting ordinance for some other condemnation upon the

books, would not be a reason for staying proceedings under the last ordinance.

The other and main reason urged on behalf of plaintiff for restraining further proceedings in the condemnation case is that a referendum vote, upon the ordinance to appropriate under which such proceedings are brought, has been sought and unless interfered with will be held at the next general election.

An act providing for the initiative and referendum in municipal corporations was passed by the general assembly May 31, 1911 (102 O. L. 521), although at that time no distinct provision for it appeared in the constitution. The amendments to Art. 2 of the constitution adopted September 3, 1912, made detailed provision for initiative and referendum as part of the legislative power of the state, and in Sec. 1f reserved similar powers to the people of each municipality to be exercised "in the manner now or hereafter provided by law." In this way the validity of the act found in 102 O. L. 521, was recognized, and the amendments of Secs. 4227-2 and 4227-3 J. C. (103 O. L., 211; 104 O. L. 239) were authorized.

By virtue of this legislation the people of the municipality become, with its council, an essential part of the law-making power and by the referendum may participate in all municipal legislation. Such participation is controlled and directed by this provision of the constitution and these statutes (*Shryock* v. *Zanesville*, 92 Ohio St. 375 [110 N. E. 937], and the rights thus given to the people should be fully upheld and protected by the courts.

On December 9, 1915, there was duly filed with the auditor of the city of Norwood a referendum petition signed by more than ten per cent of the electors of the city of Norwood, ordering that said ordinance to appropriate land for the extension of Crown avenue, passed November 10, 1915, be submitted to the electors of the city of Norwood for their approval or rejection. It is agreed that such referendum petition was duly filed within the time and in the manner and form provided by law for referendum petitions as to said ordinance, and that a certification thereof was duly made to the deputy supervisors of election for Hamilton county, Ohio, for the holding of such

McFarlan  v.  Norwood.

referendum  control  by  legislative  action,  such  powers  to  be
exercised  in  November,  1916.

The  constitution  of  Ohio  as  amended  September  3,  1912,
provides  in Article  2,  Sec.  1f,  as  follows:

"The  initiative  and  referendum  powers  are  hereby  re-
served  to  the  people  of  each  municipality  on  all  questions
which  such  municipalities  may  now  or  hereafter  be  authorized
by  law  to  control  by  legislative  actions;  such  powers  shall  be
exercised  in  the  manner  now  or  hereafter  provided  by  law."

At  the  time  of  the  adoption  of  this  section  of  the  constitu-
tion  the  act  of  May  31,  1911  (102  O.  L.  521),  in  Sec.  2,  provided
as  follows:

"Any  ordinance,  resolution  or  other  measure  of  a  munici-
pal  corporation,  granting  a  franchise  creating  a  right,  in-
volving  the  expenditure  of  money  or  exercising  any  other
power  delegated  to  such  municipal  corporation  by  the  general
assembly,  shall  be submitted  to  the  qualified  electors  for  their
approval  or  rejection  in  the  manner  herein  provided,  if  within
thirty  days  after  the  passage  or  adoption  of  such  ordinance,
resolution  or  measure  by  the  council,  there  be  filed  with  the
clerk  of  such  municipal  corporation,  a  petition  or  petitions
signed  by  fifteen  per  cent  of  the  qualified  electors  of  such
municipal  corporation,"  etc.

This  act  was  carried  into  Sec.  4227-2  G.  C.;  and  as  such  was
amended  April  17,  1913  (103  O.  L.  211),  the  first  paragraph
being  as  follows:

"Any  ordinance  or  other  measure  passed  by  the  council  of
any  municipal  corporation  shall  be  subject  to  the  referendum
except  as  hereinafter  provided.   No  ordinance  or  other  meas-
ure  shall  go  into  effect  until  thirty  days  after  it  shall  have  been
filed  with  the  mayor  of  such  municipal  corporation,  except  as
hereinafter  provided."

And  by  the  same  act  Sec.  4227-3  G.  C.  was  amended  so  that
the  first  paragraph  read  as  follows  (103  O.  L.  212):

"Whenever  the  council  of  any  municipal  corporation  is  by
law  required  to  pass  more  than  one  ordinance  or  other  measure
to  complete  the  legislation  necessary  to  make  and  pay  for  any
public  improvement  the  provisions  of  this  act  shall  apply  only

to the first ordinance or other measure required to be passed, and not to any subsequent ordinances and other measures relating thereto.''

On February 16, 1914, Sec. 4227-2 was again amended by act 104 O. L. 239, but the changes made therein are not material to the matter under consideration.

It is admitted by the solicitor of the city of Norwood that the matter of appropriating land for the opening of Crown avenue is a subject which, under proper proceedings, should be submitted to a referendum of the voters of the city, but it is contended by him that such a referendum has already been had under the resolution of council passed June 2, 1915, declaring its intention to appropriate for street purposes for the extension of Crown avenue and, therefore, under the provisions of Sec. 4227-3 G. C. a referendum of the ordinance of November 10, 1915, to appropriate said land for  the  extension  of Crown avenue can not be had.

It is agreed that a referendum election upon said resolution of June 21. 1915, was held at the regular November election in 1915, resulting in a majority vote in favor thereof, the question submitted being, ''Shall the resolution of the city of Norwood entitled 'a resolution declaring its intent to appropriate for street purposes certain real estate for the extension of Crown avenue, passed June 21, 1915,' be approved.''

It is further urged that one of the signers under the referendum petition on said resolution was T. J. McFarlan, the husband of the plaintiff, Laura B. McFarlan, and the solicitor claims that because of that fact the plaintiff is estopped from bringing this action.   There is nothing in the proof submitted, nor in the record, to show that T. J. McFarlan in any way represented the plaintiff in regard to said referendum, or, for that matter, in regard to this property.

Plaintiff, however, contends that the resolution of council declaring its intent, was merely a preliminary resolution and was not the proper subject of a referendum vote, and that therefore the referendum election upon it held in November, 1915, was without effect and in no way precludes or interferes with the referendum election which has been petitioned for to

McFarlan v. Norwood.

be held November, 1916, upon the ordinance to appropriate. This requires a consideration of the law with reference to the appropriation of real estate by municipal corporations.

The general appropriation laws as found in the Revised Statutes appeared in Chap. 3, Div. 7, Tit. 12, and Sec. 2235, R. S. provided that the council should order by yea and nay vote a resolution prepared declaring such intent and defining the purpose of the appropriation, and setting forth a pertinent description of the property. Immediately upon the introduction of such resolution and before its passage the mayor was required to cause written notice to be given to the owners or their agents of the property sought to be appropriated, such notice to be served by an officer and return made in the manner of service of summons in civil actions, and in case neither owner nor agent could be found notice by publication was provided for. No action was to be taken upon the resolution until such notice was given and then upon its passage the yeas and nays were taken; and after its passage provision was made for an application to the court to determine the amount to be paid for the property so taken.

In the street chapter, however, Chap. 13, Div. 8, Tit. 12, Sec. 2642, R. S. provided as follows:

"When it is deemed necessary by the council of any municipal incorporation to open, extend, straighten, narrow, or widen any street, alley or public highway within the limits of such corporation, the council shall provide by ordinance for the same; such ordinance shall briefly and in general terms describe the property, if any, to be appropriated for such purposes; and the proceeding for such appropriation shall be as provided in chapter three, division seven, of this title."

Under the law as it then stood the courts held that the proper method to appropriate property for street purposes was by ordinance, and that a preliminary resolution as required under Sec. 2235 R. S. was not necessary. *Tyler* v. *Columbus*, 3 Circ. Dec. 427 (6 R. 224); *Krumberg* v. *Cincinnati*, 29 Ohio St. 69; *Caldwell* v. *Carthage*, 49 Ohio St. 334 [31 N. E. 602]; *Longworth* v. *Cincinnati*, 10 Dec. Re. 683 (23 Bull. 100); *Strauss* v. *Cincinnati*, 11 Dec. Re. 92 (24 Bull. 422).

The change in the municipal code which has been carried into the General Code of Ohio has retained in Chap. 3, Div. 3, Tit. 12, Sec. 3715 (which is practically the same as Sec. 2642 R. S.), its language being as follows:

Section 3715. "When it deems it necessary the council may open, straighten, alter, divert, narrow or widen, any street, alley or public highway within the limits of the corporation. The council shall provide by ordinance thereof, which shall briefly, and in general terms, describe the part, if any, of the street, alley or public highway to be abandoned by reason of such change thereof, and the property, if any, to be appropriated for such purposes. The proceeding for such appropriation shall be as provided for the appropriation of property for other municipal purposes in this title."

The provision in the appropriation chapter, and Chap. 1, Div. 3, Tit. 12, instead of continuing merely a resolution of intent to appropriate, has provided in Sec. 3679 G. C. for passage of such a resolution declaring the intent to appropriate of which one reading only is necessary under Sec. 3680, and after its passage notice is required to be served; and then after notice, council passes an ordinance which requires a two-thirds vote directing such appropriation to proceed. It is not until after the passage of the ordinance to appropriate that the solicitor proceeds to make application to the court. The passage of the ordinance effects the appropriation. The proceeding in court is merely to determine the compensation to be paid the owners. Under the present form of the statute the resolution declaring the intent is merely preliminary. The municipality is not committed to the act of appropriation until the passage of the ordinance.

The law in regard to street improvement furnishes, by analogy, some light upon this question. In making a street improvement the first preliminary step provided for is a resolution declaring the necessity of the improvement (Sec. 3814 G. C.; Sec. 2304 R. S.), and after service of notice, in order that property owners might be advised and might file any claims for damages they might suffer by reason of the improvement, if the council decide to proceed with the improve-

McFarlan v. Norwood.

ment it passes an ordinance for the purpose. (Sec. 3825 G. C.; Sec. 2316 R. S.)

In the case of *Cincinnati* v. *Seasongood,* 46 Ohio St. 296 [21 N. E. 630], it was determined that the law in force at the time of the passage of the ordinance to improve, fixed the rights and liabilities of the owners of the property and of the city in regard to the manner of the assessment.

Upon the same reasoning it should be held that the ordinance to appropriate is now the controlling feature of the legislation for the opening or extension of a street; and that the resolution declaring the intent, which precedes it under the present statute, must be deemed merely preliminary. It has been held in *Long* v. *Portland,* 53 Or. 92 [98 Pac. 1111], that the referendum as found in Oregon applying to municipal legislation does not include preliminary matters or transient orders. If a referendum vote is to be taken upon the question of the opening of a particular street, the ordinance to appropriate is the step which should be submitted to a referendum, and any referendum taken upon the resolution or previous preliminary steps would not prevent such referendum upon the ordinance. Initiative Petition, In re, No. 2, New Jerusalem Proposition, 26 Okl. 548 [109 Pac. 823].

This conclusion is strengthened by the wording that has been used in the different forms of the referendum statute. It will be observed in the original form of Sec. 4227-2 G. C. as found in 102 O. L. 521, the word "resolution" was included in addition to "ordinance or other measure" throughout the section in its different parts, while in the statute as found in 103 O. L. the words "ordinance or other measure" are used almost entirely to the exclusion of the word "resolution;" and in the act of 104 O. L. 238, the word "resolution" does not appear. Section 4227-3, upon which defendant relies, subsequently uses the word "ordinance" again and again. And as the case of *Krumberg* v. *Cincinnati* and the other cases construe Sec. 3715 G. C. as requiring an ordinance before a street can be opened, it would seem that it is the "ordinance" rather than the "resolution or any other measure" that should be submitted to a referendum. Indeed, the action of council is

usually either by resolution or ordinance, although it may act by motion or by-law or possibly by other form of procedure. Great difficulty is frequently experienced in determining just whether a particular action is a resolution or an ordinance. In determining this question we must rely generally upon the form of the statute and the definition there provided.

The evidence in this case shows that while a favorable referendum vote was taken upon the resolution, that a referendum petition has been duly filed under an ordinance to appropriate, has been received by the proper authorities 'and filed with the election board, and will be voted upon at the next election. To permit this election to proceed will cause only a few months' delay, and considering that the project of opening this street has been pending in the municipality since 1892, and has never reached the court until in this present proceeding, although numerous resolutions and ordinances stood for years unrepealed on the village record, it would seem better to permit the election to proceed and thus test the desire of the people under the referendum vote, which appears to be taken at the proper stage on the municipal legislation. To hold otherwise would curtail rather than extend the right of referendum which has been obtained for the people under the recent amendment to the Constitution and the legislation had thereunder, which should be favored rather than restricted.

Judgment will therefore be entered for the plaintiff as prayed in the petition.

Gorman, J., concurs.

Jones (E. H.), J., dissenting.

The question here is one of statutory construction. The words "ordinance or other measure" found in Sec. 4227-2 and 4227-3, G. C. include the resolution which we all agree is the first step in a proceeding to condemn property for street purposes.

The electors of the city of Norwood have voted on the resolution adopted by council as the first legislative action in the Crown avenue matter, and there is no authority in law for a vote on the ordinance or any subsequent measure in connection with that improvement. On the contrary, Sec. 4227-3 G.

McFarlan  v.  Norwood

C. expressly forbids more than one vote and that on the ''first ordinance or other measure required to be passed.''

If there can be any doubt or ambiguity about these Secs. 4227-2 and 4227-3 G. C. when standing alone,  it  is  removed when we study their language, and especially that of the latter in its application to the initiative  provision  found  in  Sec. 4227-1.    This section provides for an initiative petition proposing ''an ordinance or other measure'' to be submitted for approval or rejection.   Sec. 4227-3 says that—

''the provisions of this act shall apply only to the first ordinance or other measure required to be passed and not to any subsequent ordinances and other measure relating thereto.''

As the resolution is a necessary step and the first step required to be taken in a street matter such as this, it follows that it alone would be initiated, and it only submitted to the voters; and that after it was successful at the polls all other necessary measures would follow without initiative or referendum.

Under the law as construed by the majority opinion however, the matter could again be brought before the voters at a subsequent election by a referendum vote on the ordinance notwithstanding the fact that the people had already ordered the improvement by a majority vote.  In my opinion this is what the decision in this case leads to, and I am quite sure such is not the law, and that in a proceeding to open a city street the initiative and referendum provisions of our code only operate upon and apply to the preliminary or first required step, viz., the resolution.